EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Federación de Maestros de Puerto Rico<br><br>    Recurrida<br><br>              v.<br><br>María M. Molina Torres<br><br>    Peticionaria | Certiorari<br><br>2003 TSPR 159<br><br>160 DPR _____ |

Número del Caso: CC-2001-961


Fecha: 5 de noviembre de 2003


Tribunal de Circuito de Apelaciones:
              Circuito Regional V


Juez Ponente:
              Hon. Rafael Ortiz Carrión

Abogados de la Parte Peticionaria:
              Lcdo. Rafael A. Nadal Arcelay
              Lcda. Lynn M. Carey Félix

Abogado de la Comisión de Relaciones del Trabajo del Servicio Público de Puerto Rico:
              Lcdo. Raymond E. Morales


Materia: Revisión resolución de la Comisión de Relaciones del    Trabajo del Servicio Público


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Federación de Maestros de
Puerto Rico

    Recurrida

        v.                     CC-2001-961   CERTIORARI

María M. Molina Torres

    Peticionaria

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ PRESIDENTE INTERINO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 5 de noviembre de 2003

¿Tiene jurisdicción el Tribunal de Circuito de Apelaciones para revisar una decisión emitida por la Comisión de Relaciones del Trabajo del Servicio Público mediante la cual la referida Comisión se negó a atender, o tramitar, una querella por alegadas prácticas ilícitas? Contestamos en la negativa. Veamos por qué.

I

El 27 de septiembre de 2000 la señora María M. Molina Torres, quien se desempeña como maestra del Departamento de Educación del Estado Libre Asociado de Puerto Rico, radicó un cargo de

práctica ilícita contra la Federación de Maestros de Puerto Rico ante la Comisión de Relaciones del Trabajo del Servicio Público. En dicho cargo ésta alegó que la Federación había violado la Sección 9.2(a) de la Ley Núm. 45 de 25 de febrero de 1998, 3 L.P.R.A. sec. 1452 (b),[1] al coartarle su derecho a no estar afiliada ni ser representada por la Federación, derecho que reconocía la mencionada Ley en su Sección 4.2,[2] 3 L.P.R.A. sec. 1451 (c).[3]

Al explicar en detalle el cargo imputado, la señora Molina Torres señaló que, a pesar de que ésta no pertenecía a la Federación, el 11 de agosto de 2000, recibió la visita del Director de la Oficina de Quejas y Agravios de la referida organización, el señor Armando Soto, quien le indicó que la organización que éste dirigía era su

---

[1] Esta Sección dispone, en lo aquí pertinente, que:

> Será práctica ilícita el que una organización de empleados o alguno de sus miembros, actuando individualmente o en concierto con otros, realice o intente realizar cualesquiera de los siguientes actos:
> (a) Intervenir, coartar o restringir a uno o más empleados en relación con su decisión de ejercer o no los derechos reconocidos en este capítulo.
> ....

[2] Esta sección fue derogada por la Ley Núm. 96 de 7 de julio de 2001. En su lugar fueron incorporadas las secciones 17.1, 3 L.P.R.A. sec. 1454 y 17.2, 3 L.P.R.A. sec. 1454(a).

[3] La Federación de Maestros de Puerto Rico fue certificada como representante exclusivo de la Unidad Apropiada de maestros y personal docente del Departamento de Educación el 29 de noviembre de 1999.

representante exclusivo y que estaba obligada por ley a representarla en una reunión que se llevaría a cabo en la Oficina Regional de Ponce del Departamento de Educación el 14 de agosto de 2000;[4] según sostuvo, el señor Soto le indicó que ésta debía pagar por los servicios que la Federación le prestaría durante el referido proceso.

La señora Molina Torres se negó a recibir tal representación por entender que ello contravenía lo dispuesto en la Ley Núm. 45, ante, en cuanto al derecho de los empleados del Departamento a la no afiliación. Según sostuvo la peticionaria, esta fue la única ocasión en que un miembro de la Federación se comunicó con ella a los fines de ofrecerle los servicios de representación de la referida organización obrera. Molina Torres, además, señaló que: "[a] pesar de que el Sr. Soto ha[bía] visitado la Escuela Ana Valldejuly en las mañanas de los días 15 de agosto de 2000 y 15 de septiembre de 2000, no se ha[bía] comunicado [con ella, por lo que] ent[endía] que ni el Sr. Soto, ni su organización ha[bían] tenido interés en representar[la]." (énfasis suplido).

La reunión pautada para el 14 de agosto de 2000 fue suspendida, por lo que la señora Molina Torres fue citada a una segunda reunión, la cual se llevaría a cabo el 18 de septiembre de 2000. Ese día, cuando Molina Torres se

---

[4] En dicha reunión se dilucidaría una controversia surgida entre la señora Molina Torres y su compañera, la maestra Elizabeth Bermúdez; esta última sí estaba afiliada a la Federación de Maestros.

presentó a la Oficina Regional de Ponce, se le notificó que la referida reunión había sido nuevamente suspendida. De acuerdo a las alegaciones de la peticionaria, a ésta se le informó que un representante de la Federación había notificado que "las maestras" no comparecerían. También se le informó que la Federación había solicitado la cancelación de la reunión, alegando que la situación debía ser discutida y aclarada en el plantel escolar. Finalmente, se le indicó que la señora García Crespo, Directora de la Escuela Valldejuly, había recibido ciertas directrices y que ésta se estaría reuniendo con las partes para comunicarle sobre las mismas. Según se le informó, si luego de celebrada la reunión alguna de las partes quedaba inconforme, dicha parte debía someter su querella ante el Director de la Oficina de Asuntos Laborales.[5]

Ante tales circunstancias, la peticionaria radicó ante la Comisión los cargos antes descritos, alegando que la Federación pretendía representarla sin su autorización, violando así lo dispuesto en la Sección 4.2 de la Ley Núm. 45, ante.[6] La Comisión refirió el asunto a uno de sus agentes quien, luego de realizar la correspondiente

---

[5] Este era el procedimiento que disponía en ese momento la Sección 10.04 del convenio colectivo para la resolución de quejas y agravios.

[6] Además, señaló que mantenía una relación contractual con la Asociación de Maestros de Puerto Rico quien le proveería representación legal para asistirla en este proceso.

investigación, emitió un informe recomendando la desestimación del cargo imputado.

Al fundamentar su determinación, el agente investigador sostuvo que no existía ninguna evidencia indicativa de que la Federación hubiese solicitado la suspensión de la reunión del 18 de septiembre de 2000 con la intención de violar los derechos de la querellante. De este modo, dio entero crédito a las alegaciones de la Federación a los efectos de que la referida solicitud había sido hecha en beneficio de la maestra unionada ya que ésta no había sido notificada con tiempo suficiente como para que pudiera estar debidamente representada, concluyendo que la solicitud de suspensión hecha por la Federación no constituía base suficiente para sustentar una alegación de violación a la Ley Núm. 45, ante.

Refiriéndose específicamente al hecho de que un miembro de la Federación le hubiese informado a la señora Molina que su organización sería su representante exclusivo, el investigador expresó que existía la posibilidad de que la Federación hubiese así actuado en el entendido de que se trataba de un procedimiento para ventilar quejas y agravios, en cuyo caso la organización tenía derecho a participar en todas las etapas del procedimiento.[7]

---

[7] Al fundamentar su contención el investigador citó lo dispuesto en la Sección 4.2 de la Ley Núm. 45, 3 L.P.R.A. sec. 1451(c), la cual en ese momento establecía que todos los empleados que no estuviesen afiliados a la

**(Continúa...)**

Acogiendo la recomendación del agente investigador, la Comisión notificó a la señora Molina Torres su determinación de <u>no</u> emitir querella y procedió a desestimar el cargo incoado, informándosele a la peticionaria que la evidencia presentada no constituía base suficiente para emitir una querella por los cargos alegados y que el hecho de que la Federación hubiese solicitado la suspensión de la reunión del 18 de septiembre de 2000 no implicaba la existencia de violación alguna. Al fundamentar su determinación la Comisión citó lo dispuesto en la Sección 16.7 de la Ley Núm 45, 3 L.P.R.A. sec. 1453(j), al sostener que la Federación tenía derecho a solicitar la suspensión de la reunión aquí en controversia.[8]

Insatisfecha con tal determinación, la peticionaria presentó una solicitud de reconsideración la cual fue declarada "No Ha Lugar". En la resolución emitida a tales efectos, la Comisión determinó que el cargo presentado por

---

organización obrera certificada como representante exclusivo debían observar las disposiciones del convenio colectivo en cuanto a los procedimientos para ventilar quejas y agravios y arbitraje; y que les serían aplicables para su beneficio las disposiciones del convenio colectivo en lo que respecta a salarios, beneficios marginales y términos y condiciones de empleo.

[8] Esta Sección dispone que "cualquier empleado p[uede] presentar querella contra su agencia directamente a ésta cuando su representante exclusivo se haya negado manifiesta o implícitamente a hacerlo, <u>pero el representante exclusivo tendrá derecho a ser notificado y a estar presente e intervenir en la discusión de la querella....</u>" (énfasis suplido).

Molina Torres no guardaba relación alguna con lo dispuesto en la Sección 9.2(a), ante, de la Ley, como en efecto alegaba la peticionaria, sino con la Sección 16.7, ante. Por esta razón limitó la discusión del asunto planteado a lo relativo a la Sección 16.7, ante, negándose a evaluar el asunto bajo el prisma de la Sección 9.2(a), ante, de la Ley.

La señora Molina Torres, alegando que la Comisión no había resuelto la verdadera controversia planteada, acudió ante el Tribunal de Circuito de Apelaciones mediante recurso de revisión. Adujo que el asunto de la suspensión de la reunión --atendido por la Sección 16.7 de la Ley-- no constituía la controversia medular del caso, sino el reclamo de que la Federación pretendía coartarle su derecho a no afiliarse ni ser representada por la referida organización obrera, asunto contemplado en la Sección 9.2(a) de la Ley. Según alegó, en la evaluación que hizo la Comisión a los efectos de determinar si emitía o no una querella en contra de la Federación no se consideró el asunto principal allí planteado que era precisamente la violación de esta Sección 9.2(a).

Mediante resolución a esos efectos, el 19 de octubre de 2001, el foro apelativo intermedio denegó la expedición del auto solicitado concluyendo que la determinación de emitir o no una querella por práctica ilícita es una decisión que realiza la Comisión en el ejercicio de su función investigativa y que, por no ser el resultado de un

procedimiento adjudicativo formal, no está sujeta a ser revisada por los tribunales.

Inconforme, la señora Molina Torres recurrió --vía *certiorari*-- ante este Tribunal, alegando que incidió el Tribunal de Circuito de Apelaciones:

> ... al denegar la expedición del auto de revisión por falta de jurisdicción y no revisar la determinación de la Comisión de Relaciones del Trabajo del Servicio Público de no emitir querella contra la Federación de Maestros por violación a la Sección 9.2 (a) de la Ley Núm. 45 de 25 de febrero de 1998.

<u>Expedimos</u> el recurso y concedimos término a ambas partes para que se expresaran en torno a sus respectivas posiciones. La parte peticionaria compareció, no así la parte recurrida.[9] Resolvemos, por tanto, sin el beneficio de su comparecencia.

## II

La Ley Núm. 45 de 25 de febrero de 1998, 3 L.P.R.A. sec. 1451 *et seq.*, conocida como "Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico", fue aprobada con el propósito de conferirle a los empleados públicos que no estén cubiertos por la Ley Núm. 130 de 8

---

[9] Mediante Resolución a esos efectos, el 22 de julio de 2002, le concedimos a la Federación un término de veinte (20) días para presentar su alegato, apercibiéndole que de no recibirse el mismo dentro del término indicado, el caso quedaría sometido sin el beneficio de su comparecencia.

de mayo de 1945,[10] 29 L.P.R.A. sec. 62 *et seq.*, el derecho a la organización sindical y a la negociación colectiva, siempre que se observen los parámetros establecidos en la Ley. Estos parámetros se circunscriben a tres criterios esenciales, a saber: (i) acomodar, dentro de las realidades fiscales en que se desenvuelve el Gobierno, el costo correspondiente al mejoramiento de las condiciones de trabajo de los empleados públicos; (ii) evitar interrupciones en los servicios que prestan las agencias gubernamentales; y (iii) promover la productividad en el servicio público. Exposición de Motivos de la Ley Núm. 45 de 25 de febrero de 1998, Leyes de Puerto Rico, pág. 148.

Mediante la aprobación de esta pieza legislativa se creó la Comisión de Relaciones del Trabajo del Servicio Público, entidad encargada de interpretar, aplicar y hacer cumplir las disposiciones de la Ley en todo lo relativo a procesos de organización, certificación, descertificación de organizaciones sindicales, procedimientos relacionados con la conciliación y arbitraje de negociaciones de convenios colectivos, procedimientos relacionados con prácticas ilícitas y en todos aquellos aspectos que la Ley le haya delegado alguna actuación en particular. Entre las muchas facultades conferidas por la Ley a esta Comisión

---

[10] Conocida como la "Ley de Relaciones del Trabajo de Puerto Rico".

está la de resolver controversias relativas a la aplicación de su estatuto.[11]

En lo que respecta a la controversia ante nuestra consideración, debemos señalar que esta pieza legislativa estableció el procedimiento a seguir en situaciones en que una agencia, representante exclusivo o cualquier otra persona interesada desee radicar ante la Comisión una querella imputando la existencia de una práctica ilícita. Sobre este particular la Sección 9.3(a) la Ley, 3 L.P.R.A. sec. 1452(c), dispone, en lo aquí pertinente, que siempre que una persona radique una querella imputando la existencia de una práctica ilícita, la Comisión "llevará a cabo una investigación de los cargos imputados y preparará un informe sobre la misma." A continuación esta Sección establece que "[s]i la Comisión determina que no hay base para imputación de prácticas ilícitas, cerrará y archivará el caso mediante orden a esos efectos." *Ibid.*

Por su parte, el Reglamento Núm. 6385 de la Comisión de Relaciones del Trabajo del Servicio Público, en su Sección 408, dispone, en lo pertinente, que:

> si la determinación de la Comisión es que no existe causa probable para encontrar que se violó la Ley, se le notificará a la parte que radicó el caso y se le dará la opción de retirar el mismo. Si la parte retira el caso será sin perjuicio. Si la parte no retira el caso se desestimará el mismo por escrito y con copia a las otras partes. En aquellos casos en que el

---

[11] Para otras facultades, deberes y responsabilidades de la Comisión, véase la Sección 1452(t) del Título 3 de Leyes de Puerto Rico Anotadas.

promovente no esté de acuerdo con la determinación de desestimar todas o alguna de las alegaciones, tendrá siete días para solicitar reconsideración a la Comisión. El escrito de reconsideración deberá especificar todos los puntos en controversia; describir la evidencia que se alega sostiene las alegaciones; e ilustrar a la Comisión sobre porqué debe existir causa probable para encontrar que se ha violado la Ley.

Finalmente, procede que se enfatice que el Inciso (d) de esta Sección establece que "[l]as determinaciones de emitir o no una querella no serán revisables ante ningún tribunal" *Ibid*.

Contrario a lo antes expuesto, si de la investigación inicial que realiza la Comisión, la cual podemos catalogar como "preliminar", surge que probablemente el imputado ha incurrido en una práctica ilícita, entonces la Comisión deberá ordenarle a uno de sus abogados que redacte una querella de conformidad con la determinación de causa probable.[12] Es a partir de este momento en que comienza el proceso adjudicativo ante la Comisión.[13]

---

[12] En estos casos no se emitirá querella hasta que haya pasado el período de reconsideración que corresponde a las desestimaciones parciales o hasta que la Comisión haya decidido dicha reconsideración, de haber sido sometida. Sección 409(b) del Reglamento Núm. 6385 de la Comisión de Relaciones del Trabajo del Servicio Público de 28 de diciembre de 2001.

[13] La Secretaría notificará esta querella, además del aviso de audiencia, a las partes. La vista ante el oficial examinador deberá celebrarse en los próximos treinta (30) días. La parte contra quien se expidió la querella tendrá diez (10) días a partir de su notificación, para contestar las alegaciones de la misma de conformidad con el Artículo 9, Sección 9.3 (e), de la Ley.

Como vemos, el procedimiento para ventilar cargos por prácticas ilícitas consta de dos fases. En la primera de ellas se realiza una investigación "preliminar" con el fin de determinar si existe causa probable para creer que el imputado ha incurrido en una práctica ilícita. La propia Ley, en su Sección 9.3(a), ante, establece que si la Comisión determina que no hay base suficiente para sostener los cargos imputados, deberá emitir una orden cerrando y archivando el caso. Adviértase que la única alternativa que se le brinda al querellante, en esta etapa de los procedimientos, surge de lo dispuesto en la precitada Sección 408 del Reglamento de la Comisión, donde se reconoce el derecho del querellante a solicitar reconsideración ante la Comisión. Es de notar que el propio Reglamento, en su Sección 408(d), dispone que en esta etapa de los procedimientos no existirá revisión judicial alguna.

Por su parte, la segunda fase del procedimiento surge tan pronto como se emite la querella correspondiente. Es en este momento en que se activan los derechos que dispone la Ley en cuanto al proceso adjudicativo que habrá de celebrarse ante el organismo administrativo. Entre los derechos que le asisten a las partes, en esta etapa de los procedimientos, está la revisión judicial de la "orden final" que emite la Comisión. A tales efectos, la Sección 9.3(j) de la Ley, 3 L.P.R.A. sec. 1452(c), dispone, en lo pertinente, que "cualquier parte adversamente afectada por

una orden final de la Comisión podrá solicitar revisión de la misma ante el Tribunal de Circuito de Apelaciones, radicando ante dicho Tribunal una petición escrita solicitando que la orden de la Comisión sea modificada o revocada...." (énfasis suplido).

Somos los primeros en admitir que podría surgir una interrogante en cuanto a si esta revisión que permite la Ley, en esta etapa de los procedimientos, debe aplicar de igual forma en aquellos casos en que se trate de una determinación de no emitir querella por práctica ilícita. Esto es, si luego de que la Comisión emite la orden denegando la expedición de la querella --en la etapa preliminar del procedimiento-- y luego de que la misma se convierta en una "orden final", por haber sido denegada su reconsideración, existe la posibilidad de revisar dicha orden ante el Tribunal de Circuito de Apelaciones.

Esta interrogante fue contestada en la negativa por este Tribunal en Luce & Company v. Junta de Relaciones del Trabajo de Puerto Rico, 82 D.P.R. 96 (1961), donde interpretamos una disposición idéntica a la que hoy ocupa nuestra atención, que contiene la Ley Núm. 130 de 8 de mayo de 1945, ante.[14] En aquella ocasión teníamos ante

---

[14]Ésta dispone, en lo pertinente, que:

Cualquier persona perjudicada por una orden final de la Junta concediendo o negando, en todo o en parte, el remedio que se interesa, podrá obtener la revisión de dicha orden en el Tribunal Supremo de Puerto Rico, radicando en dicho tribunal una petición escrita suplicando
**(Continúa...)**

nuestra consideración una controversia muy similar a la que hoy nos ocupa, pues se nos solicitó la revisión de una resolución dictada por la Junta de Relaciones del Trabajo, mediante la cual se confirmó la determinación de su Presidente de no dar inicio a una querella por prácticas ilícitas. A pesar de que se trata de dos estatutos diferentes, por considerar que la ley que creó la Junta de Relaciones del Trabajo, Ley Núm. 130 de 8 de mayo de 1945, ante, y su Reglamento,[15] contienen disposiciones muy similares a las que hoy nos ocupan y que las funciones y deberes de la Junta comparan sustancialmente con las de la Comisión de Relaciones del Trabajo del Servicio Público, somos del criterio que lo allí resuelto resulta de particular pertinencia a nuestro caso.

En Luce & Company, ante, refiriéndonos específicamente al asunto de si la decisión de la Junta de Relaciones del Trabajo al resolver si inicia o no una querella por alegadas prácticas ilícitas puede ser considerada como una "orden final" a los efectos de revisar la misma ante el Tribunal de Circuito de Apelaciones, señalamos que esta determinación depende en su totalidad de la discreción de la agencia y que, por tal razón, se ubica fuera del ámbito de la revisión judicial.[16]

_____

que la orden de la Junta sea modificada o revocada. 29 L.P.R.A. sec. 70.

[15] Reglamento Núm. 2 de 2 de abril de 1946.
[16] Adviértase que estamos ante una excepción a la norma general de que la revisión judicial de las determinaciones

(Continúa...)

En tal virtud, concluimos en dicho caso que esta determinación no es revisable como una "orden final" de la Junta y que lo dispuesto en el Artículo 9 de la Ley de Relaciones del Trabajo, 29 L.P.R.A. sec. 70, --idéntico a lo que dispone la Sección 9.3(j) de la Ley de Relaciones del Trabajo para el Servicio Público hoy bajo análisis-- no es de aplicación a aquellos casos en que lo que se intenta revisar es la denegatoria de la Comisión en cuanto a expedir querella por prácticas ilícitas.[17]

Ciertamente, la razón principal que llevó a este Tribunal a decidir, como lo hicimos en Luce & Company, ante, descansa en gran medida en el hecho de que entendimos que, al considerar cargos por prácticas ilícitas, la Junta ejercita su discreción administrativa. Ello, como norma general, impide la revisión judicial, pues, según expresamos, el curso de acción que sigue el

administrativas se presume siempre que no haya sido prohibida por la Asamblea Legislativa en forma expresa y clara. Demetrio Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Ed. Forum (1993), a las págs. 414-415. Véase, además: Bonilla v. Chardón, 118 D.P.R. 599 (1987); Santos Rodríguez v. Fuentes Fluviales, 91 D.P.R. 56, 65 (1964); Medina v. Pons, 81 D.P.R. 1 (1959); López Luiggi v. Muñoz Marín, 80 D.P.R. 4 (1957); Rivera v. Benítez, Rector, 73 D.P.R. 377 (1952).

[17] Esta norma fue reiterada por este Tribunal años más tarde en Martínez Rodríguez v. Autoridad de Energía Eléctrica, 133 D.P.R. 986 (1993).

organismo administrativo "responde a su política administrativa especializada."[18] A tales efectos señalamos:

> Resulta claro que, al considerar cargos de prácticas ilícitas, la Junta puede ejercitar su discreción administrativa al resolver si inicia o no la querella correspondiente. Como se dijo en Jacobsen et al. v. N.L.R.B., 120 F.2d 96 (C.A. 3 1941), 'el curso de acción a seguirse descansa en la sana discreción de la Junta y responde a su política administrativa especializada. No se trata de discreción legal, al menos de aquella que daría margen a los tribunales de circuito de apelaciones para ordenar a la Junta a expedir una querella'. Parece obvio que si la decisión de la Junta de negarse a expedir una querella a base de la presentación de cargos por prácticas ilícitas estuviera sujeta a revisión judicial, no sólo se inundarían los tribunales con recursos de esta clase, sino que en efecto se estaría sustituyendo la práctica administrativa uniforme

---

[18] La jurisprudencia federal ha reconocido, como norma general, que existe una presunción de no revisibilidad con relación a las determinaciones administrativas que han sido encomendadas a la discreción de la agencia. Bowen v. Michigan Academy of Family Physicians, 467 U.S. 106, (1986); Abbott Laboratories v. Gardner, 387 U.S. 136 (1967) y Citizens to Preserve Overton Park v. Volpe, 401 U.S. 401 (1971). Véase, además: 5 U.S.C. sec. 701(a)(2); Richard J. Pierce, Administrative Law Treatise, 4ta ed., New York, Ed. Aspen Law & Bussiness, V. III, págs. 1258-69.

En cuanto a las razones que sustentan esta presunción, se ha señalado lo siguiente:
> First, without benefit of a statutory delineation of the limits of discretion it would be very difficult for courts to decide in particular cases whether there had been an abuse of discretion . . . . A second reason for judicial reluctance to review discretionary decisions is that exercises of broad discretion will only infrequently violate the standard of abuse of discretion, and it would be wasteful to entertain numerous suits, many surely frivolous, in order to correct the occasional abuse. Harvey Saferstein, *Nonreviewability: A Functional Analisis of "Committed to Agengy Discretion"*, 82 HAR. L. REV. 367, 380-81 (1968).

establecida, desarrollada y orientada de un organismo especializado por el criterio judicial. Y esto nos llevaría con toda probabilidad a la incertidumbre en el campo del derecho obrero-patronal debido a las diferencias entre las distintas filosofías socio-económicas de los jueces. (citas omitidas y énfasis suplido).[19]

Entre los casos citados en apoyo de la determinación a la que llegáramos en Luce & Company, ante, debemos resaltar uno resuelto por el Tribunal de Apelaciones del Primer Circuito, Lincourt v. National Labor Relations Board, 170 F.2d 307 (1er Cir. 1948), donde se resolvió que en los procedimientos de prácticas ilícitas la radicación de la querella era una materia de discreción administrativa y que la negativa de la agencia a iniciar la misma no era revisable por las cortes de circuito. Esta norma fue ratificada años más tarde en Saez v. Goslee, 463 F.2d 214 (1er Cir. 1972), cert. den. 409 U.S. 1024 (1972), donde ese mismo tribunal sostuvo que "this situation seems paradigmatic of one which is 'committed to agency discretion'..."

Son innumerables las decisiones emitidas por los diferentes tribunales de la jurisdicción norteamericana en torno a este tema. N.L.R.B. v. Sears, Roebuck & Co., 421

---

[19] A esta conclusión llegamos tras adoptar las expresiones de varios tribunales de la jurisdicción norteamericana en relación a lo dispuesto en la Ley Nacional de Relaciones del Trabajo de 1935, conocida como Ley Wagner, (Ley de 5 de julio de 1935, cap. 372, 49 Stat. 449), y la Ley de Relaciones Obrero-Patronales de 1947, conocida como Ley Taft-Hartley (61 Stat. 136 (1947), 29 U.S.C. sec. 160 (1952), legislaciones que contienen disposiciones similares a las contenidas en la Ley Núm. 130, ante.

U.S. 132 (1975); <u>Vaca</u> v. <u>Sipes</u>, 386 U.S. 171 (1967); <u>Lincourt</u> v. <u>N.L.R.B.</u>, 170 F.2d 306, (1er Cir. 1948); <u>Saez</u> v <u>Goslee</u>, 463 F2d 214, cert. den. 409 U.S. 1024 (1972); <u>United Electrical Contractors Asso</u>. v. <u>Ordman</u>; 366 F.2d 776 (2do Cir. 1966), cert. den. 385 U.S. 1026 (1967); <u>National Maritime Union</u> v. <u>N.L.R.B.</u>, 423 F.2d 625 (2do Cir. 1970); <u>Jacobsen</u> v. <u>N.L.R.B.</u>, 120 F.2d 96 (3er Cir. 1941); <u>Contractors Asso. of Philadelphia</u> v. <u>N.L.R.B.</u>, 295 F.2d 526 (3er Cir. 1961), cert. den. 369 U.S. 813 (1962); <u>Quick</u> v. <u>N.L.R.B.</u>, 245 F.3d 231 (3er Cir. 2001); <u>George Banta Co.</u> v. <u>N.L.R.B.</u>, 626 F.2d 354 (4to Cir. 1980), cert. den. 449 U.S. 1080 (1981); <u>N.L.R.B.</u> v. <u>Bar-Brook Mfg. Co.</u>, 220 F.2d 832 (5to Cir. 1955); <u>Bova</u> v. <u>Pipefitters & Plumbers Local 60</u>, 554 F.2d 226 (5to Cir. 1977); <u>Rockford Redi-Mix Co.</u> v. <u>Zipp</u>, 632 F.2d 30 (7mo Cir. 1980), cert. den. 450 U.S. 929 (1981); <u>Braden</u> v. <u>Herman</u>, 468 F.2d 592 (8vo Cir. 1972), cert. den. 411 U.S. 916 (1973); <u>N.L.R.B.</u> v. <u>International Brotherhood of Electrical Workers</u>, 445 F.2d 1015 (9no Cir. 1971); <u>Pacific Southwest Airlines</u> v. <u>N.L.R.B.</u>, 611 F.2d 1309 (9no Cir. 1980); <u>Baker</u> v. <u>International Alliance of Theatrical Stage Employees & Moving Picture Operators</u>, 691 F.2d 1291 (9no Cir. 1982).

La norma reiterada en los mismos es a los efectos de que la decisión de emitir o no una querella con relación a prácticas ilícitas descansa en la sana discreción de la agencia. *Ibid.* Basándose en ello los tribunales, una y otra vez, han resuelto que la decisión de emitir o no una

querella por alegadas prácticas ilícitas es una que no está sujeta a ser revisada judicialmente.

Ahora bien, y como era de esperarse, esta norma tiene sus excepciones. Ello ocurre siempre que el organismo administrativo actúe de forma arbitraria o en abuso de su facultad discrecional, afectando así derechos constitucionales o estatutarios de las partes.[20] Rivera Colón v. Director Administrativo de los Tribunales, ante, a la pág. 821. Véase, además: Leedom v. Kyne, 358 U.S. 184 (1958). De ser así, el acceso a los tribunales sí estaría disponible. Rivera Colón v. Director Administrativo de los Tribunales, ante.

A tono con lo anterior, varios tribunales de la jurisdicción norteamericana han resuelto --a modo de excepción-- que procede la revisión judicial de determinaciones emitidas por la Junta Nacional de

---

[20] En el pasado hemos señalado que "cualquier delegación de poder legislativo concediendo discreción absoluta, resultaría inconstitucional, pues ello equivaldría a una delegación in toto del poder legislativo, actuación contraria a los cánones constitucionales de una democracia." Pueblo v. Sánchez González, 90 D.P.R. 197, 200 (1964). Ciertamente, "el concepto legal de la discreción no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho, sino la obligación de aplicar las reglas del conocimiento distintivo a ciertos hechos jurídicos con el objeto de mitigar los efectos adversos de la Ley, a veces diferenciando unos efectos de otros." Ibid.

Cónsono con lo anterior, en Rodríguez v. Srio. de Obras Públicas, 86 D.P.R. 258, 265 (1962), señalamos que "[l]a discreción administrativa no es absoluta" y que "[n]ingún tribunal estaría dispuesto a convertir la discreción administrativa en un término mágico que permita una arbitrariedad."

Relaciones del Trabajo, negándose a emitir querella por prácticas ilícitas siempre que la Junta haya actuado en exceso del poder delegado. Bova v. Pipefitters & Plumbers Local 60, 554 F.2d 226 (5to Cir. 1977); Terminal Freight Handling Co. v. Solien, 444 F.2d 699 (8vo Cir. 1971); Véase, además: Leedom v. Kyne, ante. Se ha entendido que dicho organismo administrativo ha actuado en exceso del poder delegado en aquellos casos en que ignora una prohibición expresa contenida en la ley. *Ibid*.

Otra instancia en que los tribunales han optado por ignorar la norma general a los efectos de que la determinación de la agencia en cuanto a no expedir una querella por prácticas ilícitas no es revisable judicialmente, es en aquellos casos en que la actuación administrativa descansa en errores de derecho o interpretaciones erróneas de la ley. Associated Builders & Contractors, Inc. v. Irving, 610 F.2d 1221 (4to Cir. 1979); N.L.R.B. v. International Brotherhood of Electrical Workers, 445 F.2d 1015 (9no Cir. 1971); Southern California Dist. Council of Laborers ect. v. Ordman, 318 F.Supp. 633 (CD Cal 1970).

De lo anterior se colige que ante determinaciones como las que hoy nos ocupa --emitir o no querella por práctica ilícita de trabajo-- la revisión judicial sólo procede en circunstancias de excepción, pues como se expresara en Hennepin Broadcasting Associates, Inc. v. N.L.R.B., 408 F.Supp. 932 (D.C. Minn. 1975), sólo en casos

extremos podría obligarse a la Comisión a emitir, o al menos a reconsiderar, su negativa a expedir una querella por prácticas ilícitas. Véase, además: Southern California Dist. Council of Laborers ect. v. Ordman, ante; Glenn A. Guarino, *Refusal of National Labor Relations Board to File Unfair Labor Practice Complaint as Subject to Review in Independent Suit in Federal District Court*, 69 A.L.R. Fed. 870 (1984).

## III

En virtud de lo expuesto en el acápite que antecede, y considerando que las disposiciones de la Ley de Relaciones del Trabajo para el Servicio Público, Ley Núm. 45 de 25 de febrero de 1998, que hoy nos ocupan son idénticas a las contenidas en la Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 de 8 de mayo de 1945, --y su Reglamento-- y que los organismos administrativos creados por ambas leyes ejercen y regulan funciones similares, ciertamente, no vemos razón alguna por la cual no podamos establecer en el presente caso la misma normativa que rige bajo la Ley de Relaciones del Trabajo en torno a la revisión judicial de la determinación de la agencia al resolver si emite o no querella por práctica ilícita.[21]

---

21 Hemos de recordar que dicha norma ha sido avalada no sólo por la jurisprudencia de este Tribunal, sino también por la jurisprudencia de los tribunales federales.

Esto es, hoy resolvemos que la determinación que hace la Comisión de Relaciones del Trabajo para el Servicio Público al resolver si inicia o no una querella por prácticas ilícitas no constituye una "orden final" a los efectos de revisar la misma ante el foro apelativo intermedio. Dicha determinación depende en su totalidad de la discreción de la Comisión y, por consiguiente, no está sujeta a ser revisada judicialmente. Ello, claro está, sujeto a que no estén presentes ninguna de las circunstancias de excepción reconocidas jurisprudencialmente. Éstas son: (i) que la determinación de la Comisión afecte derechos constitucionales de las partes por haber actuado de forma arbitraria o en abuso de su facultad administrativa; (ii) que la Comisión ignore una prohibición expresa contenida en su Ley orgánica y (iii) que la actuación administrativa descanse en una interpretación errónea de la Ley.

IV

Dentro del marco doctrinal previamente esbozado es que debemos evaluar si procede la revisión judicial de una determinación emitida por la Comisión de Relaciones del Trabajo del Servicio Público negándose a emitir querella por alegadas prácticas ilícitas. Por entender que estamos ante una determinación administrativa que ha sido encomendada a la discreción de la agencia y que no están presentes ninguna de las excepciones que nos permiten

asumir jurisdicción en este tipo de asunto, contestamos dicha interrogante en la negativa y, por consiguiente, confirmamos el dictamen emitido por el Tribunal de Circuito de Apelaciones en cuanto a este particular. Veamos.

En el caso de autos la peticionaria radicó un cargo de práctica ilícita contra la Federación de Maestros de Puerto Rico, alegando que ésta había violado la Sección 9.2(a) de la Ley Núm. 45, ante, al coartarle su derecho a no estar afiliada ni ser representada por la referida organización obrera. La Comisión, luego de realizar la correspondiente investigación, determinó que la evidencia presentada no era suficiente para sustentar un cargo por violación a lo dispuesto en la Sección 9.2(a) de la Ley. A su entender la prueba presentada evidenciaba que la Federación, en representación de la maestra unionada, había solicitado la suspensión de la reunión en controversia al amparo del derecho que le reconoce la Sección 16.7 de la Ley a estar presente siempre que se celebren reuniones de este tipo.

En su escrito ante nos la peticionaria sostiene que en el momento en que la Comisión archivó y desestimó su solicitud de cargos, teniendo por resuelta una controversia de derecho que quedó sin resolver, dio paso a que la misma pueda ser revisada judicialmente. Aun cuando reconoce que la Comisión tiene amplia discreción para investigar cargos de práctica ilícita y determinar si va a emitir querella a tenor con lo resuelto en los casos Luce & Company v. Junta

de Relaciones del Trabajo de Puerto Rico, ante, y Martínez Rodríguez v. Autoridad de Energía Eléctrica, 133 D.P.R. 986 (1993), ante, la peticionaria arguye que dicha discreción debe ceder ante situaciones como la de autos en que, alegadamente, las determinaciones resultan ser irrazonables, injustas e inconsistentes.

De este modo, y amparándose en que la Comisión actuó de manera irrazonable e ilegal al emitir su determinación, la peticionaria solicita de esta Curia que revoque la decisión emitida por el foro apelativo intermedio declarándose sin jurisdicción para revisar la determinación de la Comisión en cuanto a no emitir querella en contra de la Federación de Maestros por la alegada violación a la Sección 9.2(a) de la Ley Núm. 45, ante.[22] No podemos refrendar dicha posición.

Ya hemos señalado que la determinación preliminar que hace la Comisión de Relaciones del Trabajo del Servicio Público a los efectos de emitir o no una querella por prácticas ilícitas es una que ha sido encomendada a la discreción de la Comisión. Dicha determinación cae fuera

_____

[22] Nos resulta sorprendente por demás el hecho de que la peticionaria, en lugar de solicitar que ordenemos a la Comisión que expida la correspondiente querella, nos solicita que: (i) que declaremos inconstitucional el requisito impuesto por ley de notificar la intención de no ser afiliado, so pena de ser ingresado automáticamente a las filas del representante exclusivo certificado; (ii) declaremos ilegal y ultra vires el término de quince días anunciado por la Comisión en su Resolución del 13 de enero de 1999; y (iii) declaremos que todo descuento salarial de empleado gubernamental debe ser autorizado por escrito, debiendo devolver el Departamento de Educación todo descuento hecho sin tal autorización.

del ámbito de la revisión judicial a menos que pueda demostrarse que la Comisión ha actuado de forma arbitraria o en abuso de su discreción y que ha afectado derechos constitucionales o estatutarios de las partes.

En el presente caso la señora Molina Torres no ha alegado, ni los hechos lo demuestran, que al negarse a emitir querella por prácticas ilícitas la Comisión haya actuado de manera *ultra vires* o en exceso del poder delegado. Tampoco surge que estemos ante un caso de interpretación errónea de la Ley Núm. 45 o ante una determinación que haya sido sustentada en un error de derecho. Tal y como ocurrió en Martínez Rodríguez v. Autoridad de Energía Eléctrica, ante, en el presente caso la negativa de la Comisión a expedir querella respondió a que no encontró que la Federación hubiese incurrido en la práctica ilícita imputada. Dicha determinación ciertamente descansa en la experiencia y pericia de la agencia, quien posee el conocimiento especializado para entender en este tipo de asunto.[23] De forma alguna podemos concluir que en el presente caso la Comisión ha abusado de su poder en el proceso decisional. Todo lo contrario, los hechos demuestran que la actuación de la agencia fue una razonable, tomada en virtud de la evidencia que le fuera presentada.

---

[23] Véase: Demetrio Fernández Quiñones, *La revisión judicial de las decisiones administrativas*, 69 REV. JUR. U.P.R. 1129 (2000).

Tampoco podemos avalar la contención de la peticionaria a los efectos de que la Comisión se negó a considerar la controversia medular del caso resolviendo el mismo al amparo de un asunto secundario. Una mera lectura del informe emitido por el agente investigador en el presente caso evidencia que la Comisión sí consideró el asunto de la violación a la Sección 9.2(a), ante, realizando la investigación y análisis correspondientes. Fue luego de este proceso de análisis que el investigador concluyó que el cargo debía ser desestimado, pues, a base de su pericia y conocimiento especializado, entendió que la Federación no había incurrido en la violación de la referida sección. El hecho de que en su resolución la Comisión haya señalado que el cargo presentado por la peticionaria no guardaba relación alguna con lo dispuesto en la Sección 9.2(a), sino con la Sección 16.7 de la Ley Núm. 45, ante, no significa que no haya investigado o atendido el cargo presentado. Es evidente que dicha determinación fue tomada luego de analizar a cabalidad los hechos del presente caso y entender que no existía evidencia suficiente para sustentar la alegación de Molina Torres en cuanto a la violación de la referida sección.

La peticionaria no nos ha puesto en condiciones de revisar esta determinación, por lo que estamos impedidos de entender en la misma.

V

En mérito de lo antes expuesto, procede decretar la confirmación de la sentencia emitida por el Tribunal de Circuito de Apelaciones en el presente caso.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Presidente Interino

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Federación de Maestros de
Puerto Rico

    Recurrida

       v.                          CC-2001-961    CERTIORARI

María M. Molina Torres

    Peticionaria


SENTENCIA

San Juan, Puerto Rico, a 5 de noviembre de 2003


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la emitida en el presente caso por el Tribunal de Circuito de Apelaciones.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. Los Jueces Asociados señora Naveira de Rodón y señor Fuster Berlingeri disienten sin opinión escrita.


Patricia Otón Olivieri
Secretaria del Tribunal Supremo