**CONNECTICUT LIGHT AND POWER COMPANY, Plaintiff,**

v.

**Boyd S. LEEDOM, Philip Ray Rodgers, Stephen S. Bean, Joseph A. Jenkins and John H. Fanning, individually, and as Chairman and Members of the National Labor Relations Board, Defendants.**

Civ. A. No. 2822–58.

United States District Court
District of Columbia.
March 25, 1959.

Lawrence M. Kearns, Boston, Mass., and Gerard D. Reilly, Washington, D. C., for plaintiff.

Jerome D. Fenton, Gen. Counsel, Thomas J. McDermott, Associate Gen. Counsel, Marcel Mallet-Provost, Asst. Gen. Counsel, Duane B. Beeson and Earle W. Putman, Attys., N. L. R. B., Washington, D. C., for defendant.

McLAUGHLIN, District Judge.

The facts in this case are not in dispute. Plaintiff has eight employees who are called load dispatchers and one em-

ployee called a load forecaster,[1] in addition to its other production and management personnel. These nine men are not members of any union. The International Brotherhood of Electrical Workers [hereinafter the "Union"] is the bargaining representative for the production and maintenance employees of plaintiff. In March 1958, the Union petitioned the National Labor Relations Board for certification as the bargaining agent of all plaintiff's load dispatchers and load forecaster pursuant to Section 9(a) and (c) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 159 (a) and (c). A hearing was held by the Board on that petition. At the hearing, plaintiff took the position that its load dispatchers and load forecaster were supervisors within the meaning of § 2(11) of the Act, 29 U.S.C.A. § 152(11),[2] and, therefore, they should not have been allowed to vote in the representation election. The Board in September 1958, found that the dispatchers and forecaster were not supervisors within the meaning of the Act, but employees,[3] and it directed an election to determine if the nine men desired to be represented by the Union. An election was held in October 1958. The vote was eight to one against union affiliation. As a result, the Union was not certified as the collective bargaining agent of the nine men. That is, these men did not become a part of the existing production and maintenance unit currently represented by the Union. Although that was the end of the matter for all practical purposes, the plaintiff requested the Board to vacate its decision insofar as it had ruled that the dispatchers and forecaster were not supervisors within the meaning of the Act. The Board refused. Thereafter in November 1958, the plaintiff filed this suit for injunction, requesting the court to compel the Board to vacate its decision as to the status of plaintiff's load dispatchers, and also to compel the Board to rule that the dispatchers are supervisors within the meaning of the Act.[4]

Both parties have filed motions for summary judgment; the Board filing in the alternative, a motion to dismiss. There is no necessity for reaching any substantive questions, the latter motion to dismiss being dispositive of the case on jurisdictional grounds.

■■ The first ground alleged by the defendant in support of its motion to dismiss is that there is lacking a justiciable controversy between the parties which can be the subject of judicial determination at this time. The defendant points out that the Union lost the election and, therefore, the plaintiff is not required to recognize the Union as the bargaining representative of the load dispatchers. The defendant claims that the Board's certification against Union representation dispelled any legal effect which might otherwise have been attached to its finding that the load dispatchers are non-supervisory employees. Plaintiff's contention, however, is that now, notwithstanding the fact that the Union lost the election, the employer will have

1. A load dispatcher, in general, coordinates the activities of the various generating power plants of the utility company by regulating the production and distribution of the power based on the present use and future expected needs of the customers of the utility company. A load forecaster estimates the amount of power that will be needed 24 hours in advance, based on past use and expected needs.

2. Section 2(11) reads as follows:
"The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

3. Section 2(3) of the Act excludes from the definition of the term "employee" any individual employed as a "supervisor."

4. The petitioner does not seek the same relief for the load forecaster in this action. Therefore, unless otherwise stated the court will concern itself only with the eight load dispatchers.

to deal with these eight men as if they were employees under the Act, which, of course, if true, would restrict the employer in his dealings with the men. What the plaintiff is saying, in effect, is that the finding by the Board that these men were employees is conclusive and established the status of these men not only for the purpose of the election, but indefinitely. Plaintiff further contends that since review of this decision of the Board is precluded under ordinary § 10(e) and § 10(f) proceedings, it is without any remedy to seek review of this purportedly unlawful finding unless this court affords it relief.

In the foregoing circumstances the court is unable to discern any justiciable controversy between the parties. The "Decision and Direction of Election" issued by the defendant does not indicate that the Board classified these men as employees for any other purpose than that, specifically, of qualifying them to vote in the particular representation election of October 3, 1958. Logically, the Board's determination as to the status of these men could not have a conclusive effect in future Board proceedings. The whole basis for the finding that the men were employees in the first place was necessarily based on the duties, authority, etc., of the men, which for reasons too obvious to mention, could easily change, possibly necessitating a different finding by the Board in some future proceeding under the Act. For the same reason, this court could not order the Board to make a ruling as requested by the plaintiff. And, as indicated by the defendant, the Board itself has held that a prior Board determination of employee status is not binding in future representation proceedings, especially where, as here, there is no bargaining history. United States Gypsum Co., 112 N.L.R.B. 20 (1957). See Lindsay Newspapers Inc., 112 N.L.R.B. 1206 (1955) and Bethlehem Steel Co., 111 N.L.R.B. 185

(1955). Cf. N. L. R. B. v. Montgomery Ward & Co., 2 Cir., 1957, 242 F.2d 497. A fortiori, a prior Board determination of employee status in a representation proceeding would not be binding in a future unfair labor practice proceedings.

In the light of what has been said above, the court is not persuaded that the plaintiff has presented a justiciable controversy granting this court jurisdiction.[5] See Public Service Comm. of Utah v. Wycoff, 1952, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291; United Public Workers of America v. Mitchell, 1946, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754; Aetna Life Ins. Co. v. Haworth, 1935, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617; Fairchild v. Hughes, 1921, 258 U.S. 126, 42 S.Ct. 274, 66 L.Ed. 499; and United States v. Alaska Steamship Co., 1919, 253 U.S. 113, 40 S.Ct. 448, 64 L.Ed. 808.

The second and equally as important ground alleged by the defendant in support of its motion to dismiss is that this court does not have jurisdiction over the subject matter of the suit.

There are no provisions in the Taft-Hartley Act granting the federal district courts jurisdiction to review representation proceedings of the Board. The plaintiff seeks to avail itself of the processes of this court in the instant case by attempting to invoke the court's equity jurisdiction under § 24(8) of the Judicial Code, 28 U.S.C. § 1337 and § 10 (a), 10(b), 10(c) and 10(e) of the Administration Procedure Act of 1946, 5 U.S.C.A. § 1001 et seq. Each statute will be discussed separately.

■■ The general rule that the federal district courts do not have jurisdiction to review representation proceedings of the Board is well established. The plaintiff, however, relies on Leedom v. Kyne,[6] recently decided by the Supreme Court. There, the Court held that a federal district court could exercise its general equity powers where the

5. In light of the observations made, the plaintiff, in addition, has not shown irreparable injury, a necessary element for the relief it seeks.

6. 1958, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210.

Board had acted unlawfully in exceeding its statutory authority in a representation proceeding. However a careful consideration of that case leads the court to the conclusion that it has not changed the prior existing rule that review of a Board order in a certification proceeding is not a "final order" and, therefore, is not subject to judicial review except as it may be drawn in question by a petition for enforcement or review of an order made under § 10 of the Act. American Federation of Labor v. National Labor Relations Board, 1939, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347. As pointed out in Kyne, the holding in the A.F.L. case, supra, specifically left open the question of whether the district courts would be deprived of their jurisdiction if the Board's action was contrary to the statute or the requirements of due process. The facts in the Kyne case merely fit the criteria laid down by the court in the A.F.L. case, supra, for properly invoking the jurisdiction of the district court. See Inland Empire District Council v. Millis, 1944, 325 U.S. 697, 65 S.Ct. 1316, 89 L.Ed. 1877. In Kyne, the Board acted unlawfully in exceeding its statutory authority.[7]

It is pertinent here to point out that in Kyne the unlawful action of the Board inflicted an injury on the Union. It was observed by the court in Leedom v. Kyne, 1957, 101 U.S.App.D.C. 398, 400, 249 F. 2d 490, 492, that in the circumstances of that case review under § 10 of the Act was highly improbable, and if the Union were not allowed to seek relief in the district court, it probably would have been denied relief. That situation is not present in the instant case.

As stated, the Kyne case did not materially alter the existing law as to review of Board representation proceedings. It merely filled in the gaps and expressly stated what had been indicated was the law in prior decisions. See A. F. L. v. N. L. R. B., supra and DePratter v. Farmer, 1956, 98 U.S.App.D.C. 74, 234 F.2d 74.

■■ Certainly the court in Kyne did not intend to allow a mere allegation of unlawful action on the part of the Board to confer jurisdiction on the district court. Cf. Fay v. Douds, 2 Cir., 1949, 172 F.2d 720 and Fitzgerald v. Douds, 2 Cir., 1948, 167 F.2d 714. Such a holding, in the court's judgment would obviously have been contrary to Congressional intent.[8] Exactly what unlawful action must be alleged in order to confer jurisdiction on the district courts is a question to be decided on the particular facts of each case. In the opinion of the court, the case at bar does not present a question of unlawful action on the part of the Board of the type which would confer jurisdiction on this court. This case appears clearly distinguishable from the Kyne case in which the provisions of the section of the Act in question, § 9(b) (1) were rigid and mandatory. In the instant case the applicable section of the Act[9] allows the exercise of administrative judgment on the part of the Board.

In view of the above observations, the court is of the opinion that the plaintiff may not invoke the aid of the court under its general equity powers.

■ Petitioner also seeks to invoke the jurisdiction of this court under the provisions of Sections 10(a), 10(b), 10 (c), and 10(e) of the Administrative Procedure Act of 1946, 5 U.S.C.A. § 1001 et seq. The rule has been generally followed that the Administrative Procedure Act does not confer jurisdiction on the district courts to review repre-

7. In Kyne, the Board ordered that non-professional employees be put in the same bargaining unit as professional employees, without first allowing the professionals a vote to determine if a majority of them favored "inclusion in such unit," contrary to the clear and mandatory language of § 9(b) (1) of the Act.

8. The court is not unmindful of the fact that this suit was not instituted until after the representation election was held, at which the union did not receive a majority of the votes, but is not persuaded that that fact is sufficient to take the case out of the applicable general rule.

9. See § 2(11) of the Act, note 2, supra.

sentation proceedings of the Board.[10] In view of the distinctions between the Kyne case and the instant case the court sees no necessity to consider whether the Administrative Procedure Act would be applicable in a Kyne type situation.

On the basis of all the foregoing considerations the court is of the opinion that the defendant's motion to dismiss should be granted. Counsel for the defendant will submit appropriate order.

10. Elm City Broadcasting Corp. v. N.L.R.B., D.C.Conn.1954, 123 F.Supp. 838; Brisbois v. Hague, D.C.Mass.1949, 85 F.Supp. 13; White v. Douds, D.C.S.D.N.Y. 1948, 80 F.Supp. 402; White v. Herzog, D.C.D.C.1948, 80 F.Supp. 407; and Fay v. Douds, D.C.S.D.N.Y.1948, 78 F.Supp. 703, affirmed 2 Cir., 1949, 172 F.2d 720. CF. Kirkland v. Atlantic Coast Line R. Co., 1948, 83 U.S.App.D.C. 205, 167 F.2d 529. But see N.L.R.B. v. Glen Raven Knitting Mills, 4 Cir., 1956, 235 F.2d 413.