## LUCE & COMPANY, S. EN C., peticionaria, *v.* JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, demandada.

Número 65.

*Reasignado:* 6 de febrero de 1961. *Resuelto:* 27 de febrero de 1961.

*Hartzell, Fernández & Novas,* abogados de la peticionaria; *J. B. Fernández Badillo, Procurador General,* y *José Orlando Grau, Rafael Buscaglia, Hijo,* y *Leonardo Llequis,* abogados los tres últimos de la Junta de Relaciones del Trabajo, abogados todos de la Junta recurrida.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

El artículo 9 de la Ley de Relaciones del Trabajo de

---

Puerto Rico (Ley núm. 130 de 8 de mayo de 1945, pág. 407, 29 L.P.R.A. sec. 70) dispone que "cualquier persona perjudicada por *una orden final* de la Junta concediendo o negando en todo o en parte, el remedio que se interesa, podrá obtener la revisión de dicha orden en la Corte Suprema de Puerto Rico, radicando en dicha Corte una petición escrita suplicando que la orden de la Junta sea modificada o revocada". Al amparo de esta disposición, la peticionaria Luce & Company, S. en C., nos pide que revisemos una resolución dictada por la Junta en 13 de julio de 1959 mediante la cual se confirmó la actuación de su Presidente(¹) que desestimó una solicitud de dicha peticionaria para que se instaran cargos de prácticas ilícitas de trabajo contra el Sindicato de Trabajadores, UPWA-AFL-CIO y su local núm. 804 de Guayama, afiliada al Sindicato de Trabajadores y la Unión Local núm. 858 de Salinas, afiliada al Sindicato Azucarero UPWA-AFL-CIO. Dicha práctica ilícita consistía en la alegada violación de un convenio colectivo al provocar, fomentar y alentar un estado de huelga en varias colonias de la peticionaria, (Art. 8(2) (a) de la Ley 130 de 1945, supra, 29 L.P.R.A. sec. 69; *Junta de Relaciones del Trabajo* v. *I.L.A.*, 73 D.P.R. 616 (1952). La Junta nos ha pedido que desestimemos la petición por falta de jurisdicción ya que la resolución cuya revisión se intenta no es una *orden final*.

La Ley de Relaciones del Trabajo confiere facultad a la Junta para impedir que cualquier persona se dedique a cualesquiera de las prácticas ilícitas de trabajo que en la misma se enumeran, y al efecto, podrá llevar a cabo una investigación preliminar de las peticiones y de los cargos que se radiquen. Una vez efectuada esta investigación la

---

(¹) El art. II(1) (c) del Reglamento núm. 2 de la Junta de Relaciones del Trabajo dice como sigue:

"Al radicarse un cargo, la Junta hará que se practique una investigación preliminar de las alegaciones contenidas en el mismo. El Presidente de la Junta decidirá si debe o no expedir una querella y un aviso de audiencia."

Junta puede optar por desestimar y archivar el cargo o la petición; o, si en su opinión se justificare la iniciación de procedimientos adicionales, podrá proceder en la forma dispuesta en el artículo 9 (1), supra. El procedimiento al efecto se fija en el artículo II del Reglamento de la Junta de Relaciones del Trabajo (29 R. & R.P.R. sec. ....). Cf. Weasler, *Práctica y Procedimiento ante la Junta Nacional de Relaciones del Trabajo*, 28 Revista Jurídica de la Universidad de Puerto Rico, pág. 131.

El artículo 9 (*b*) citado que autoriza la revisión judicial de órdenes finales de la Junta es equivalente a la sección 10 de la Ley Nacional de Relaciones del Trabajo de 1935, conocida como Ley Wagner, (Ley de 5 de julio de 1935, cap. 372, 49 Stat. 449), y sustancialmente igual a la sección 10 (*f*) de la Ley de Relaciones Obrero-Patronales de 1947, conocida como Ley Taft-Hartley (61 Stat. 136 (1947), 29 U.S.C. sec. 160 (1952)). Estas disposiciones federales han sido objeto de frecuente interpretación.[2]

Se ha resuelto que no constituyen órdenes finales sujetas a revisión *a*) una resolución sobre certificación para la determinación de representantes a los fines de negociación colectiva, *Leedom* v. *Kyne*, 358 U.S. 184 (1958); *Connecticut Light & Power Co.* v. *Leedom*, 174 F. Supp. 171 D.C. D.C., (1959); *Pittsburg Plate Glass Co.* v. *N.L.R.B.*, 313 U.S. 146 (1941); *American Federation of Labor* v. *N.L.R.B.*, 308 U.S. 401 (1940); *Douds* v. *International Longshoremen's Ass'n.*, 147 F. Supp. 103 (D.C. N.Y., 1956), confirmado en 241 F.2d 278; *Rodríguez y Unión de Obreros Independientes de Fajardo*, 1 D.J.R.T. 824, 832 (1950), a menos que se haya dictado una orden final en un procedimiento para la prevención de prácticas ilícitas basada en hechos certificados en un

---

[2] Repetidamente hemos resuelto que al adoptar un estatuto de otra jurisdicción, se presume que la legislatura lo hace con la interpretación dádale en el estado de su origen. *Jiménez* v. *Jones*, 74 D.P.R. 260 (1953); *Corretjer* v. *Tribunal de Distrito*, 72 D.P.R. 754 (1951); *Nieves* v. *Jones*, 72 D.P.R. 287 (1951); *Padilla* v. *Vidal*, 71 D.P.R. 517 (1950); *Legarret* v. *Tesorero*, 55 D.P.R. 22 (1939); *Vázquez* v. *Font*, 53 D.P.R. 26 (1938).

procedimiento de representación, como la negativa a negociar con una unión certificada, *General Drivers, Chauffeurs, and Helpers, Local 886, A.F.L.* v. *N.L.R.B.*, 179 F.2d 492 (C.A. 10, 1950); *N.L.R.B.* v. *Prudential Ins. Co. of America*, 154 F.2d 385 (C.C.A. 6, 1946); *Reilly* v. *Millis*, 144 F.2d 259 (C.C.A. D.C., 1944) cert. denegado 325 U.S. 879; *b*) la expedición de una querella y la notificación para la celebración de una audiencia, *Thompson Products* v. *N.L.R.B.*, 133 F.2d 637 (C.C.A. 6, 1943); *c*) la negativa a expedir un subpoena duces tecum en el curso de una investigación preliminar informal de cargos de prácticas ilícitas; *Laundry Workers Internat'l Union, Local 221* v. *N.L.R.B.*, 197 F.2d 701 (C.A. 5, 1952); *d*) una orden dejando sin efecto la certificación de una unidad para negociación colectiva, *Fitzgerald* v. *Douds*, 167 F.2d 714 (C.C.A. 2, 1948); *e*) una orden desestimando una petición para que se dicte una orden de certificación, *A. G. M. Workers' Ass'n.* v. *N.L.R.B.*, 117 F.2d 209 (C.C.A. 7, 1940); *f*) una orden para la celebración de elecciones a los fines de determinar la unidad contratante para fines de negociación, *Wilson & Co.* v. *N.L.R.B.*, 120 F.2d 913 (C.C.A. 7, 1941), *E. I. Du Pont De Nemours & Co.* v. *N.L.R.B.*, 116 F.2d 388, 401 (C.C.A. 4, 1940) cert. denegado 313 U.S. 571; y, *g*) una orden anulando elecciones celebradas para determinar la unidad contratante, *N.L.R.B.* v. *J. L. Brandeis & Sons*, 145 F.25 556 (C.C.A. 8, 1944).

Igualmente se ha resuelto que están sujetas a revisión una orden de la Junta ratificando que determinada organización es la unidad apropiada y estableciendo una práctica ilícita, *N.L.R.B.* v. *Swift & Co.*, 162 F.2d 575 (C.C.A. 3, 1947) cert. denegado 332 U.S. 791; y una orden sobre reposición de determinados empleados y sobre abono de paga suspendida, *N.L.R.B.* v. *Royal Palm Ice Co.*, 201 F.2d 667 (C.A. 5, 1953); *Home Beneficial Life Ins. Co.* v. *N.L.R.B.*, 172 F.2d 62 (C.A. 4, 1949).

En *Lincourt* v. *National Labor Relations Board*, 170 F.2d 307 (C.A. 1, 1948), se intentó revisar una determinación del Abogado (General Counsel) de la Junta Nacional de Relaciones del Trabajo negándose a instar una querella a nombre de la Junta imputando prácticas ilícitas del trabajo. En una opinión *per curiam*, el Tribunal de Apelaciones del Primer Circuito (Jueces Magruder y Woodbury) sostuvo que la radicación de la querella era una materia de discreción administrativa, y se añadió que "Según el texto original de la Ley Nacional de Relaciones del Trabajo, 49 Stat. 449, era evidente que la negativa de la Junta a iniciar una querella no era revisable por las cortes de circuito. Véase *Jacobsen* v. *N.L.R.B.*, 3 Cir., 1941, 120 F.2d 96, 100. La Ley de Relaciones Obrero-Patronales de 1947 no ha efectuado cambio alguno en el texto pertinente sobre jurisdicción de la sección 10 . . . . ." (³) En el mismo sentido se pronuncia *General Drivers, etc.* v. *National Labor Relations Board*, supra.

En *Manhattan Const. Co.* v. *National Labor Relations Board*, 198 F.2d 320 (C.A. 10, 1952) se presentaron cargos contra una unión obrera debido a que, por motivos de una disputa jurisdiccional entre dos uniones rivales, se paralizaron unas obras por ausencia de los trabajadores. Se celebró una audiencia, con notificación a todas las partes; se presentó prueba y se sometió a la Junta un informe por el oficial examinador. Con anterioridad a la fecha de presentación de los cargos, la disputa jurisdiccional había sido sometida por las uniones a una junta para el arreglo de esta clase de contiendas. Con vista de este hecho, y a base del récord del procedimiento, la Junta ordenó su desestima-

---

(³) Uno de los cambios principales introducidos en 1947 fue privar a la Junta, y conceder al Abogado de la Junta, el poder para investigar los cargos de prácticas ilícitas y expedir las querellas correspondientes. Sin embargo, este hecho no altera la situación que consideramos ni la virtualidad de la jurisprudencia que interpreta la sección 10 (*f*) de la Ley de Relaciones Obrero-Patronales de 1947. La diferencia entre el estatuto que se interpreta en el caso de *Lincourt* y la parte pertinente de la sección 9 de nuestra ley es más aparente que real.

ción.  La compañía acudió al tribunal para que se revisara la orden de la Junta.  Al desestimar la solicitud, la Corte de Apelaciones del Décimo Circuito indicó que la frase "orden final" sujeta a revisión se refiere *exclusivamente* a 1) una orden final de la Junta desestimando una querella, en todo o en parte; y 2) una orden en un procedimiento por prácticas ilícitas concediendo un remedio bajo las secciones 10($b$) y ($c$) de la ley.

*Anthony* v. *National Labor Relations Board*, 204 F.2d 832 (C.A. 6, 1953) sostiene que la aprobación por la Junta de un acuerdo de transacción entre el patrono y la unión, no constituye una orden final sujeta a revisión.  El hecho de que mediante el acuerdo el patrono se obligaba a fijar un aviso a todos sus empleados—medida de previsión que generalmente se incorpora en las órdenes para cesar y desistir— no convertía la orden en una orden final de la Junta, ya que precisamente la transacción es uno de los medios para lograr que no sea necesario la expedición formal de una querella. ([4])

Resulta claro que, al considerar cargos de prácticas ilícitas, la Junta puede ejercitar su discreción administrativa al resolver si inicia o no la querella correspondiente.  Como se dijo en *Jacobsen et al.* v. *N.L.R.B.*, 120 F.2d 96 (C.A. 3 1941), "el curso de acción a seguirse descansa en la sana discreción de la Junta y responde a su política administrativa especializada.  No se trata de discreción legal, al menos de aquella que daría margen a los tribunales de circuito de apelaciones para ordenar a la Junta a expedir una querella".  Parece obvio que si la decisión de la Junta de negarse a expedir una querella a base de la presentación de cargos por

([4]) Véanse, Forkosch, *Judicial Review of NLRB "Final" Unfair Practice Orders* (1953), 4 Lab. L. J. 787, en donde se comenta el caso de *Anthony;* Gardner, *Judicial Review of Preliminary Orders of National Labor Administration Agencies After Leedom* v. *Kyne* (1959), Bufalo L. Rev. 372, 377.  Véase además, para una crítica de la interpretación judicial de la frase "orden final", Redstone y Sosenbum, *N.L.R.B. Certification—Judicial Review* (1945), 33 Geo. L. J. 471, 481-2.

prácticas ilícitas estuviera sujeta a revisión judicial, no sólo se inundarían los tribunales con recursos de esta clase, sino que en efecto se estaría sustituyendo la práctica administrativa uniforme establecida, desarrollada y orientada de un organismo especializado por el criterio judicial. Y esto nos llevaría con toda probabilidad a la incertidumbre en el campo del derecho obrero-patronal debido a las diferencias entre las distintas filosofías socio-económicas de los jueces.([5]) Véanse *N.L.R.B.* v. *Barrett Co.*, 120 F.2d 583 (C.C.A. 7, 1941) y *Hourihan* v. *N.L.R.B.*, 201 F.2d 187 (C.A. D.C., 1952), cert. denegado 345 U.S. 930.

Habiendo llegado a la conclusión de que la actuación de la Junta no es revisable como una "orden final"([6]) *procede la desestimación solicitada,* y es innecesario resolver el incidente planteado sobre la certificación del expediente.

El Juez Asociado Sr. Serrano Geyls no intervino.

---

([5]) Aun en los casos en que las órdenes finales son revisables, el ámbito de la intervención judicial ha sido expresamente limitado al disponerse que "las conclusiones de la Junta en cuanto a los hechos, *si están respaldadas por la evidencia,* serán en igual forma concluyentes".

([6]) Aclaramos que no estamos resolviendo si bajo circunstancias adecuadas puede recurrirse a los tribunales en relación con una actuación de la Junta que pudiera ser contraria a la ley, negándose a seguir un procedimiento.