EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Departamento de Educación<br><br>Recurrido<br><br>vs.<br><br>Sindicato Puertorriqueño de Maestros<br><br>Peticionario | Certiorari<br><br>2006 TSPR 121<br><br>168 DPR _____ |

Número del Caso: CC-2005-795

Fecha: 13 de julio de 2006

Tribunal de Apelaciones:

>    Región Judicial de San Juan

Jueza Ponente:

>    Hon. Aleida Varona Méndez

Abogado de la Parte Peticionaria:

>    Lcdo. Rafael A. Nadal Aecelay
>    Lcda. Melissa López Díaz

Federación de Maestros de P.R.:

>    Lcdo. José Velaz Ortiz
>    Lcdo. Ricardo Santos Ortiz

Comisión de Relaciones del Trabajo del Servicio Público:

>    Lcdo. Raymond E. Morales

Oficina del Procurador General:

>    Lcdo. Guillermo A. Mangual Amador
>    Procurador General Auxiliar

Materia: Revisión procedente de la Comisión de Relaciones del Trabajo del Servicio Público.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Departamento de Educación

    Recurrido

        vs.                    CC-2005-795      CERTIORARI

Sindicato Puertorriqueño de
Maestros

    Peticionario

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 13 de julio de 2006

El 25 de febrero de 2003, el Sindicato Puertorriqueño de Maestros --en adelante, el Sindicato-- presentó, al amparo de la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico, Ley Núm. 45 de 25 de febrero de 1998, una petición de representación ante la Comisión de Relaciones del Trabajo del Servicio Público, en adelante la Comisión. En la referida petición, alegó que un número sustancial de empleados que componían la unidad apropiada de maestros y/o personal docente del Departamento de Educación deseaban estar representados por el Sindicato. Además, solicitó que se iniciara el procedimiento correspondiente con el fin de ser

certificado como representante exclusivo de dicha unidad apropiada.

La Federación de Maestros de Puerto Rico, representante certificado de la unidad peticionada, solicitó la desestimación de la petición radicada por el Sindicato. En un escrito posterior, indicó que debido a que la celebración de la elección estaba sujeta a la verificación de interés sustancial, la Comisión debía verificar las firmas existentes en los endosos de las tarjetas de representación, radicadas por el Sindicato, ya que algunos de sus miembros tenían motivos fundados para sospechar que se les había incluido como endosantes del Sindicato cuando nunca habían firmado tales endosos.

Conforme a su Reglamento, la Comisión procedió a verificar si existía el alegado interés sustancial según las tarjetas sometidas por el Sindicato. El número de empleados en la lista sometida por el Departamento de Educación en la unidad apropiada de maestros y/o personal docente era un total de 39,506, siendo 11,852 la cantidad correspondiente al 30% requerido por las disposiciones de la Ley Núm. 45, ante. Determinó la Comisión que el Sindicato sólo había obtenido 10,380 tarjetas de representación, faltando un total de 1,472 para cumplir con el 30% del interés sustancial. Por consiguiente, la Comisión desestimó la petición de representación presentada por el Sindicato.

El Sindicato solicitó la reconsideración de la desestimación de su petición. Alegó que había revisado y recontado todas las tarjetas de representación que sometió a la consideración de la Comisión y que había contado 13,001 tarjetas de empleados de la unidad apropiada en cuestión, y que de ellas, 12,825 eran válidas[1]. Por consiguiente, solicitó se celebrara una vista en la que éste tuviera la oportunidad de constatar una a una las tarjetas de representación en poder de la Comisión.

En virtud de la referida solicitud de reconsideración, la Comisión ordenó a su División de Investigaciones a reexaminar y realizar un recuento de la muestra de interés sometida por el Sindicato y a rendir un informe sobre sus hallazgos, conclusiones y recomendaciones. En el informe que sometiera a la Comisión, la División de Investigaciones determinó que el número de tarjetas válidas sometidas por el Sindicato para la determinación del interés sustancial ascendía a 11,519, cantidad que no componía el 30% requerido.[2]

Conforme al informe rendido por la División de Investigaciones, la Comisión emitió una Resolución el 5 de enero de 2005 confirmando su determinación anterior, esto es, desestimando la petición de representación presentada

---

[1] Adujo que solo habían 176 repetidas.

[2] Un simple cálculo matemático indica que al Sindicato aun le faltaban un total de 333 tarjetas para componer el treinta por ciento (30%) del interés sustancial.

por el Sindicato por falta de interés sustancial y decretando el archivo del caso.

El Sindicato presentó un escrito, titulado "Urgente Reconsideración", en el que solicitó de la Comisión se le otorgaran veinte días laborables "para comparecer y presentar prueba frente a la Resolución del 5 de enero de 2005 que cumple con el 30% requerido para su Petición de Elección; se ordene y a esos efectos se entregue copia de la Lista de Elegibles en poder de la Honorable Comisión y/o Departamento de Educación; se dé acceso al expediente administrativo en la Honorable Comisión, bajo las medidas que se entiendan apropiadas." Mediante carta a esos efectos, la Comisión informó al representante legal del Sindicato que, por haberse ordenado el cierre y archivo del caso mediante la Resolución emitida el 5 de enero de 2005, no consideraría la referida solicitud de reconsideración.

Inconforme con la desestimación de su petición de representación, el Sindicato acudió al Tribunal de Apelaciones mediante recurso de revisión administrativa. Alegó que la petición cumplía con el 30% de interés sustancial requerido, razón por la cual la Resolución de la Comisión debía ser revocada; además, solicitó del tribunal apelativo que ordenase la elección según solicitada por el Sindicato.

Tanto la Comisión como la Federación solicitaron la desestimación del recurso presentado por alegada falta de jurisdicción. Argumentaron que la resolución desestimando

la petición del proceso de representación emitida por la Comisión no era revisable.

Trabada la controversia a los fines de determinar si el Tribunal de Apelaciones tenía jurisdicción para revisar una resolución de la Comisión dictada como parte del procedimiento de representación, dicho foro resolvió que de acuerdo a la jurisprudencia de este Tribunal, una resolución de la Junta de Relaciones del Trabajo --en adelante, la Junta-- dentro de un procedimiento de representación no era revisable salvo únicamente por la vía colateral como parte de una determinación de la Junta sobre práctica ilícita de trabajo; normativa que se había hecho extensiva a casos similares ante la Comisión en el caso de Fed. de Maestros de P.R. v. Molina Torres, res. el 5 de noviembre de 2003, 2003 TSPR 159.

Expresó, además, el referido foro, que en el caso ante su consideración no se encontraba presente ninguna de las excepciones plasmadas por este Tribunal en Fed. de Maestros de P.R. v. Molina Torres, ante, y que permitían la revisión de una decisión de la Comisión sobre si procedía o no iniciar cargos por prácticas ilícitas. En virtud de ello, el foro apelativo intermedio se declaró sin jurisdicción para revisar la resolución recurrida.

Insatisfecho con el anterior dictamen, el Sindicato Puertorriqueño de Maestros acudió ante este Tribunal mediante recurso de certiorari, imputándole al foro apelativo intermedio haber errado:

al declararse sin jurisdicción por alegadamente no encontrarse presente ninguna de las excepciones de Federación de Maestros v. Molina Torres, a pesar de que el laudo de la comisión de relaciones del trabajo del servicio público viola derechos constitucionales y estatutarios de miles de trabajadores, está fundamentado en una interpretación errónea de la ley y va en contra de los propósitos de la Ley 45.

Examinada la petición de *certiorari* concedimos a la parte recurrida el término de veinte (20) días para mostrar causa por la cual este Tribunal no debía expedir el auto solicitado y dictar Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Apelaciones en vista de los resuelto por este Tribunal en el caso de A.R.P.E. v. Coordinadora Unitaria de Trabajadores del Estado, res. el 19 de octubre de 2005, 2005 TSPR 147.

La parte recurrida ha comparecido en cumplimiento de nuestra orden. Estando en condiciones de resolver el recurso radicado, procedemos a así hacerlo. Confirmamos; veamos porqué.

I

La Ley Núm. 45, ante, fue aprobada con el propósito de conferirle a los empleados públicos que no estén cubiertos por la Ley Núm. 130 de 8 de mayo de 1945, conocida como la Ley de Relaciones del Trabajo de Puerto Rico, 29 L.P.R.A. sec. 62 *et seq.*, el derecho a la organización sindical y a la negociación colectiva, siempre que se observen los parámetros establecidos en la mencionada Ley.

A esos fines, la Ley Núm. 45, ante, le reconoció a los empleados de las agencias del gobierno central el derecho a organizarse y afiliarse en organizaciones sindicales de su elección. 3 L.P.R.A. sec. 1451b.[3] De esta manera, los empleados de las diferentes unidades apropiadas que deseen sindicalizarse podrán escoger, mediante voto mayoritario, la organización que habrá de representarles ante la agencia correspondiente. 3 L.P.R.A. sec. 1451g. La organización sindical que prevalezca en las elecciones, y que sea certificada como representante exclusivo de los empleados comprendidos en esa unidad apropiada, tendrá la autoridad para negociar con la agencia correspondiente un convenio colectivo "en el que se discuten y acuerden disposiciones sobre salarios, beneficios marginales, términos y condiciones de empleo." 3 L.P.R.A. sec. 1451(j).

Mediante la aprobación de esta pieza legislativa se creó la Comisión de Relaciones del Trabajo del Servicio Público, entidad encargada de interpretar, aplicar y hacer cumplir las disposiciones de la Ley en todo lo relativo a procesos de organización, certificación, descertificación de organizaciones sindicales, procedimientos relacionados con la conciliación y arbitraje de negociaciones de convenios colectivos, procedimientos relacionados con

---

[3] Tan reciente como el 19 de octubre de 2005, en A.R.P.E. v. C.U.T.E., ante discutimos ampliamente las disposiciones de la Ley Núm. 45, ante. Nos remitimos a la referida discusión. Véase, además: Asoc. de Maestros de P.R. v. Comisión de Relaciones del Trabajo, res. 31 de marzo de 2003, 2003 TSPR 47; Fed. de Maestros de P.R. v. Molina Torres, res. 5 de noviembre de 2003, 2003 TSPR 159.

prácticas ilícitas y en todos aquellos aspectos que la Ley le haya delegado alguna actuación en particular.

En lo que respecta a la controversia ante nuestra consideración, debemos señalar que esta pieza legislativa estableció el procedimiento a seguir en los procesos de organización y certificación de organizaciones sindicales para la negociación colectiva. La Sección 4.5 de la Ley Núm. 45, 3 L.P.R.A. sec. 1451g, dispone que:

> Las organizaciones sindicales interesadas en ser certificadas como representantes exclusivos de una unidad apropiada para fines de la negociación colectiva someterán ante la Comisión prueba demostrativa de que un treinta por ciento (30%) del total de empleados de dicha unidad apropiada ha endosado una petición para que se lleve a cabo una votación para determinar si desean estar representados por una organización sindical. (…) (Citas omitidas) (énfasis suplido).

La Sección 4.7 de la Ley, además, le confirió la facultad a la Comisión de aprobar un Reglamento para la elección del representante sindical en el que se establezcan los procedimientos a ser observados por las organizaciones obreras y los patronos. En la preparación de dicho Reglamento, la Comisión deberá considerar los procedimientos establecidos en las secs. 61 *et seq*. del Título 29, conocidas como la "Ley Nacional de Relaciones del Trabajo". 3 L.P.R.A. sec. 1451(h).

A esos fines, la Comisión adoptó el Reglamento Núm. 6385 del 26 de enero de 2002. El referido Reglamento regula, entre otros, el procedimiento de representación. Éste se inicia con la presentación de una petición de parte

de una organización sindical solicitando una elección para escoger un representante exclusivo. Sección 300 del Reglamento. Dicha petición tiene que cumplir con todos los requisitos reglamentarios. Sección 302 del Reglamento.

Una petición de representación se podrá presentar para los siguientes propósitos: <u>solicitar una elección para escoger un representante exclusivo</u>; clarificar una unidad apropiada, enmendar una certificación de representante exclusivo; y descertificar un representante exclusivo bajo la Sección 4.7 (a) 7 (b) de la Ley. Sección 300 Inciso (A). Los procedimientos para la selección de representantes exclusivos; clarificación de unidad apropiada; enmienda a certificaciones de representante exclusivo; y descertificación bajo la Sección 4.7 (a) y (b) <u>se considerarán como investigativos y no adjudicativos</u>.

De particular relevancia al presente caso, el Reglamento dispone que toda petición radicada por alguna organización obrera, al amparo de la Sección 300(A)(1), o grupo de empleados al amparo de la Sección 300(A)(4), <u>deberá estar acompañada de un interés sustancial de no menos de un treinta por ciento (30%) de los empleados en la unidad apropiada</u>; los documentos originales que evidencien el interés sustancial, los cuales deberán contener el nombre de la agencia, nombre y firma de la persona y su clasificación o puesto; y una lista en orden alfabético, por apellidos primero y nombre después, de todas las

personas que firmaron el interés sustancial con su clasificación o puesto. Sección 302, Inciso (B) (1) y (2).

Luego de presentada la petición, y en casos en que las unidades apropiadas no hayan sido previamente establecidas, la Comisión notificará a las partes para que comparezcan ante un agente de ésta y puedan discutir y estipular las controversias sobre el alcance y la composición de las unidades apropiadas. Sección 305(B). Si la controversia subsiste la Comisión podrá ordenar la celebración de una Sesión Especial para la Determinación de Unidades Apropiadas. *Ibid*. En dicha Sesión las partes tendrán el derecho de presentar evidencia ante la Comisión sobre como debe quedar establecida la unidad apropiada.[4]

Luego de que la Comisión determine las unidades apropiadas, o luego de haberse radicado una petición bajo la Sección 300(A)(1) o (4), en aquellos casos en que la Comisión ya hubiese previamente determinado las unidades apropiadas, ordenará una investigación de la muestra del

---

[4] Dispone el Reglamento, además, que las referidas sesiones especiales serán públicas y comenzarán con una exposición oral de cada parte sobre como debe quedar constituida la unidad apropiada. Luego de celebrada la Sesión Especial las partes podrán someter alegatos dentro del término que les conceda la Comisión. Luego de que la Comisión haya obtenido toda la evidencia pertinente y cuente con las posiciones expresadas por las partes, entonces determinará cuál será la unidad apropiada y ordenará la celebración de una elección. Una vez la Comisión le notifique a las partes la Determinación de Unidad Apropiada, éstos tendrán catorce (14) días para radicar excepciones. Luego de celebrada la elección y si no hay objeciones, la Comisión emitirá una Certificación de Representante Exclusivo y ordenará el cierre y archivo del caso. Secciones 309 (D), (G) y (H) del Reglamento Núm. 6385.

interés sometida para verificar si la peticionaria o las interventoras, de haber alguna, cumplen con el requisito de interés sustancial en las unidades apropiadas determinadas por la Comisión. Sección 307, Inciso (B).

De la peticionaria cumplir con el requisito de interés sustancial de treinta por ciento (30%), la Comisión ordenará una elección. Sección 307, Inciso (C).

Podemos colegir de lo anterior, en consecuencia, que el hecho que la organización sindical que presente la petición cumpla con el requisito de interés sustancial es determinante para que la Comisión proceda a ordenar una elección.

II

A

En cuanto al ámbito de revisión judicial de las decisiones emitidas por la Comisión[5], la Ley Núm. 45, ante dispone en su Sección 10.1 que:

> El Tribunal de Circuito de Apelaciones, a solicitud de parte, tendrá jurisdicción para entender discrecionalmente en los recursos de revisión de órdenes y resoluciones finales de la Comisión según los términos que dispone las secs. 2101 *et seq.* de este título, conocidas como "Ley de Procedimiento Administrativo Uniforme". Los recursos de revisión serán competencia de los Paneles de la Región Judicial de San Juan... (Énfasis nuestro)(citas omitidas).

[5] La Ley Núm. 45, ante, dispone específicamente sobre la revisión judicial de laudos de arbitraje y sobre las determinaciones adjudicando controversias sobre prácticas ilícitas. Véase Secciones 6.1(g) y 9.3(j), 3 L.P.R.A. secs. 1451p y 1452c. Sin embargo, la Ley no dispone específicamente sobre la revisión de determinaciones de unidad apropiada ni sobre peticiones de representación.

Recientemente, este Tribunal analizó la disposición antes citada en el caso de A.R.P.E. v. C.U.T.E., ante, con el propósito de resolver si una determinación de unidad apropiada de la Comisión era revisable ante el Tribunal de Apelaciones. Los hechos del mencionado caso, en apretada síntesis, fueron los siguientes: la Coordinadora Unitaria de Trabajadores del Estado (C.U.T.E.) presentó una petición de representación ante la Comisión con el propósito de convertirse en la representante exclusiva de los empleados de la Administración de Reglamentos y Permisos (A.R.P.E.) Luego de celebrada una vista, la Comisión hizo una determinación de qué empleados constituían la unidad apropiada para participar en la elección a celebrarse a los efectos de que los empleados de A.R.P.E. determinaran si deseaban ser representados por la C.U.T.E. Posterior a dicha determinación, A.R.P.E. presentó una moción con sus excepciones a la determinación de unidad apropiada.[6]

En el entretanto, la Comisión celebró la elección y certificó a la C.U.T.E. como el representante exclusivo de los empleados. Luego, la Comisión resolvió finalmente la cuestión sobre unidad apropiada, determinando mantener en

---

[6] En la referida moción solicitó se excluyeran ciertos puestos de la unidad apropiada por entender que estaban íntimamente ligados a la gerencia.

la unidad apropiada los puestos que A.R.P.E. solicitó fueran excluidos de esta.[7]

A.R.P.E. apeló dicha determinación ante el Tribunal de Apelaciones. En su escrito de apelación alegó que la misma era revisable ya que la configuración de una unidad apropiada era determinante en el ejercicio de los derechos y obligaciones de los empleados y patronos en el marco de las relaciones laborales. El tribunal apelativo intermedio desestimó el recurso de revisión por entender que la determinación de unidad apropiada no era revisable ya que la misma era una decisión interlocutoria que no adjudicaba derechos u obligaciones. Además, aplicando por analogía la Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 de 8 de mayo de 1945, 29 L.P.R.A. secs. 41 *et seq.*, señaló que las determinaciones de unidad apropiada sólo eran revisables por la vía colateral como parte de una determinación de práctica ilícita.[8]

Revocamos la determinación del tribunal apelativo. Al así hacerlo, expresamos que la Ley de Relaciones del

---

[7] En dicha resolución se incluyeron determinaciones de hecho y conclusiones de derecho. La misma también fue firmada por el Presidente de la Comisión.

[8] Dicho esquema de revisión judicial de decisiones de la Junta de Relaciones del Trabajo fue incorporado de la jurisdicción federal a la nuestra. A esos efectos hemos resuelto que las decisiones y órdenes dimanantes de casos de representación sólo son revisables mediante un ataque colateral imbricado en una decisión relativa a alguna práctica ilícita del trabajo. Véase: Federación de Maestros de Puerto Rico v. Molina Torres, ante; U.P.R. v. Asoc. Pur. Profs. Universitarios, 136 D.P.R. 335 (1994); Luce & Co. v. Junta de Relaciones del Trabajo, 82 D.P.R. 96 (1961); Junta Relaciones del Trabajo v. Ortega, 79 D.P.R. 760 (1956).

Trabajo, ciertamente, limita la revisión judicial de las decisiones que emite la Junta de Relaciones del Trabajo a decisiones finales sobre prácticas ilícitas del trabajo.[9] Ello no obstante, indicamos que, a diferencia de lo anterior, un análisis de la Sección 10.1 revelaba que la Ley Núm. 45, ante, expresamente establece una revisión directa al foro apelativo intermedio de **todas** las decisiones de la Comisión que fuesen "órdenes y resoluciones finales". En vista de que la Ley Núm. 45, ante, no contiene una limitación análoga a la de la Ley de Relaciones del Trabajo en cuanto al ámbito de revisión judicial, establecimos que no procedía aplicar, por analogía, la misma a un caso efectuado ante la Comisión.[10]

En resumen, en A.R.P.E. v. C.U.T.E., ante, resolvimos que para determinar si las decisiones emitidas en los procedimientos ante la Comisión eran "órdenes o resoluciones finales" --y por ende, revisables ante el foro apelativo intermedio-- correspondía analizar las mismas a la luz de la Ley de Procedimiento Administrativo Uniforme y sus disposiciones en cuanto a la revisión de decisiones administrativas.

---

[9] A dicho resultado se llega de una lectura conjunta de los Incisos (3) y (4) del Artículo 5 de la Ley de Relaciones del Trabajo, ante, y del Artículo 9 de la referida Ley. 29 L.P.R.A. secs. 66 y 70.

[10] En otras palabras, la Ley Núm. 45, ante, no limita la revisión judicial de decisiones de la Comisión a decisiones finales sobre prácticas ilícitas del trabajo.

B

Dispone la Sección 4.2 de la L.P.A.U., 3 L.P.R.A. sec. 2172, sobre la revisión judicial de decisiones administrativas, que:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar un recurso de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 2165 de este título, cuando el término para instar el recurso de revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. La parte notificará la presentación de la solicitud de revisión a la agencia y a todas las partes dentro del término para instar el recurso de revisión. La notificación podrá hacerse por correo... (citas omitidas).

De la anterior disposición podemos colegir que una orden o resolución administrativa debe cumplir con dos requisitos para que la misma sea revisable judicialmente, a saber: (1) que la resolución que se pretenda revisar sea final y no interlocutoria y (2) que la parte adversamente afectada por la orden haya agotado los remedios provistos por la agencia. Oficina de la Procuradora del Paciente v. Aseguradora MCS, IPA 603, res. el 22 de septiembre de 2004, 2004 TSPR 153; Junta Examinadora de Tecnólogos Médicos v. Elías, 144 D.P.R. 483 (1997).

Específicamente sobre lo que constituye una "orden o resolución", la L.P.A.U. define dicho término como "cualquier decisión o acción agencial de aplicación particular que adjudique derechos y obligaciones de una o más personas específicas..." Sección 1.3, 3 L.P.R.A. sec. 2102. (Citas omitidas).

Por otro lado, una orden o resolución <u>parcial</u>, según la L.P.A.U., es "aquella acción agencial que adjudique algún derecho u obligación que no ponga fin a la controversia total sino a un aspecto específico de la misma." Sección 1.3(g), 3 L.P.R.A. sec. 2102(g). La referida disposición estatutaria también define una orden interlocutoria como aquella "acción de la agencia en un procedimiento adjudicativo que <u>disponga de algún asunto meramente procesal</u>." Sección 1.3(h), 3 L.P.R.A. sec. 2102 (h). Una orden o resolución interlocutoria de una agencia, incluyendo aquellas que se emitan en procesos que se desarrollen por etapas, no serán revisables directamente. La disposición interlocutoria de la agencia podrá ser objeto de un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia. Sección 4.2, 3 L.P.R.A. sec. 2172.

Aunque la L.P.A.U. no define, específicamente, lo que constituye una "orden o resolución final", <u>sí establece los **requisitos** de la misma</u>. Según la Sección 3.14, 3 L.P.R.A. sec. 2164. de la L.P.A.U., estos son: que ésta incluya unas determinaciones de hecho, las conclusiones de

derecho de la decisión, una advertencia sobre el derecho a solicitar una reconsideración o revisión judicial según sea el caso y que la misma esté firmada por el jefe de la agencia o por cualquier otro funcionario autorizado por ley.

Como es sabido, mediante la aprobación de la L.P.A.U., la Asamblea Legislativa limitó la revisión judicial exclusivamente a las órdenes finales de las agencias. Al así hacerlo, se aseguró que la intervención judicial se realizara después de que concluyeran los trámites administrativos y se adjudicaran todas las controversias pendientes ante la agencia. La intención legislativa consistió en evitar una intromisión indebida, y a destiempo, en el trámite administrativo por parte de los tribunales. Comisionado de Seguros v. Universal Ins. Co., Inc., res. el 1 de febrero de 2006, 2006 TSPR 15.

Una "orden o resolución final" de una agencia administrativa, según hemos interpretado la misma en nuestra jurisprudencia, es aquella que dispone del caso ante la agencia y tiene efectos adjudicativos y dispositivos sobre las partes. Se trata de la resolución que culmina en forma final el procedimiento administrativo respecto a todas las controversias. Véase: Junta Examinadora de Tecnólogos Médicos v. Elías, ante.

En Comisionado de Seguros v. Universal Ins. Co., Inc.[11], ante, expresamos que dos condiciones tenían que ser satisfechas para que una decisión administrativa pudiese ser considerada final: primero, la actuación de la agencia debe representar la culminación de su proceso decisorio; y segundo, la actuación administrativa debe ser una en la cual se determinen todos los derechos y obligaciones de las partes o surjan consecuencias legales. *Ibid*.

III

De conformidad con lo anteriormente expuesto, nos resta determinar si en el presente caso la resolución de la Comisión desestimando una petición de representación por no cumplirse con el interés sustancial es una "orden o resolución final", según el derecho administrativo vigente, y por lo tanto, revisable ante el Tribunal de Apelaciones.

En el antes citado caso de A.R.P.E. v. C.U.T.E. resolvimos que la naturaleza de la resolución emitida por la Comisión[12] era una "orden o resolución final", conforme a la Ley de Procedimiento Administrativo Uniforme, por las siguientes razones: (1) la misma se emitió luego de celebrada una vista, donde ambas partes (A.R.P.E. y la C.U.T.E.) presentaron evidencia y luego presentaron alegatos; (2) la Comisión emitió una determinación de

---

[11] Citando al Tribunal Supremo de los Estados Unidos en Bennett v. Spear, 520 U.S. 154 (1997).

[12] Resolviendo de forma final las excepciones presentadas por A.R.P.E. sobre unidad apropiada.

unidad apropiada en donde se adjudicaron los derechos y obligaciones de empleados a ser representados por una organización obrera; (3) se resolvieron finalmente las excepciones presentadas por A.R.P.E., por lo que finalizó la controversia en cuanto a este aspecto; (4) se incluyeron determinaciones de hecho y conclusiones de derecho; (5) la misma fue firmada por el Presidente de la Comisión y; (6) la Comisión llevó a cabo el procedimiento eleccionario y certificó al representante de la negociación colectiva (la C.U.T.E.) dándole finalidad a la controversia.

Resolvimos --en ese caso en particular-- que la determinación era una final ya que, culminados los procedimientos ante la agencia, ya no quedaba asunto pendiente alguno que resolver. Además, porque una determinación de unidad apropiada reconoce derechos sustantivos a los empleados públicos en tanto les reconoce el derecho a la negociación colectiva. Dicha determinación también le impone al patrono la obligación de negociar con los empleados públicos a través de su representante exclusivo. Al constituirse derechos y obligaciones de las partes, no hay duda que la determinación de unidad apropiada en ese caso era propiamente una adjudicación final revisable.

Resulta pertinente, en este momento, señalar --sobre lo que constituye una "adjudicación"-- que la Sección 1.3 de la L.P.A.U. define la misma como "el pronunciamiento mediante el cual una agencia determina los derechos,

obligaciones o privilegios que corresponda a una parte." 3 L.P.R.A. sec. 2102(b). Sobre ese particular, expresamos en A.R.P.E. v. C.U.T.E., ante, que la configuración de la unidad apropiada y la determinación de si un puesto forma parte de la misma, constituía, ciertamente, una adjudicación para efectos de la L.P.A.U.

Por otro lado, debe mantenerse presente que las determinaciones de una agencia en procesos adjudicativos son aquellas que definen los derechos y deberes legales de personas específicas. Por eso, este Tribunal ha definido el proceso de adjudicación como uno *cuasi*-judicial. Véase: Junta de Planificación v. Frente Unido Pro Defensa del Valle de Lajas, res. el 26 de agosto de 2005, 2005 TSPR 117.


                                   IV

En el presente caso, el Sindicato Puertorriqueño de Maestros alega que la determinación de la Comisión de desestimar la petición de elección, sin otorgarle oportunidad razonable de confirmar el interés sustancial, violentó derechos fundamentales de libertad de asociación y expresión de los maestros, además de que constituyó una violación al debido proceso de ley. Sostiene, específicamente, que puede cumplir con el interés sustancial y que la Comisión pudo haber recibido prueba, frente a la corroboración del patrono, de los endosos que el Sindicato alega son válidos.

Por su parte, la Comisión alega que el propósito de demostrar adecuadamente la existencia de un interés sustancial, por parte de organizaciones obreras y de peticionarios individuales que inician o que interesen participar en un caso de representación, es determinar si llevar a cabo la elección sirve un propósito útil bajo la ley y si existe interés suficiente por parte de los empleados para justificar la utilización del tiempo de la agencia, esfuerzos y recursos para llevar a cabo la elección. Según la Comisión, dicho proceso es uno investigativo y dentro de los poderes discrecionales de la agencia administrativa.

A modo ilustrativo, y en relación a lo que constituye la muestra de interés sustancial (showing of interest), reseñamos, brevemente, lo expresado por la *Federal Labor Relations Authority* en el caso de North Carolina Army National Guard et al, 34 FLRA 377, 383 (1990), a los efectos de que: "A Regional Director's determination of the adequacy of the showing of interest is administrative in nature and is not subject to collateral attack at a unit or representation hearing.[13] The requirement that a showing of interest be made serves an administrative purpose in helping to avoid unnecessary expenditure of time and funds where there is no reasonable assurance that a genuine

---

[13] Citando el *Code of Federal Regulations*, 5 C.F.R. § 2422.2(f)(1).

representation question exists and prevents the parties from abusing the Authority's processes." (Énfasis nuestro).

La anterior postura ha sido avalada por la Junta Nacional de Relaciones del Trabajo en el caso de Gaylord Bar Co., 313 NLRB 306, 306-307 (1993). A esos efectos allí se expresó que:

> The Board consistently has held that the showing of interest is a matter for administrative determination, and is not litigable by the parties. It is exclusively within the Board's discretion to determine whether a party's showing of interest is sufficient to warrant processing a petition. The purpose of a showing of interest is to determine whether the conduct of an election serves a useful purpose under the statute--that is, whether there is sufficient employee interest to warrant the expenditure of time, effort, and funds to conduct an election.[14]

En el presente caso, la Comisión desestimó la petición de representación porque el Sindicato incumplió con un requisito reglamentario: la muestra del treinta por ciento (30%) de interés sustancial. Es menester enfatizar que dicha determinación fue tomada luego que la Comisión ordenara a su División de Investigaciones que investigara el asunto del interés sustancial, la cual encontró que aun faltaban 333 tarjetas para que el Sindicato cumpliera con el requerido treinta por ciento (30%).

---

[14] Citando a Barnes Hospital, 306 NLRB 201 fn. 2 (1992); Globe Iron Foundry, 112 NLRB 1200 (1955); Potomac Electric Power Co., 111 NLRB 553, 554 (1955). S. H. Kress & Co., 137 NLRB 1244, 1248 (1962) NLRB v. J. I. Case Co., 201 F.2d 597 (9th Cir. 1953); Stockton Roofing Co., 304 NLRB 699 (1991).

No hay duda que la determinación sobre si existe o no el referido interés sustancial <u>es un procedimiento de naturaleza investigativa</u> que lleva a cabo la Comisión en el cual, luego de presentada una petición de representación, <u>se determina si verdaderamente se justifica la celebración de una elección</u>. A diferencia del procedimiento de determinación de unidad apropiada, <u>en el que se adjudican finalmente los derechos y obligaciones de las personas a ser representadas por una organización obrera</u>, en el caso de una determinación de interés sustancial <u>se trata de investigar si dicha organización obrera cumple o no con un requisito esencial inicial para proceder a celebrar una elección</u>.

Ausente la demostración de interés sustancial, la Comisión <u>no</u> tiene que considerar a dicha organización como posible representante exclusivo, <u>ni</u> celebrar elección alguna. Además, durante dicho procedimiento <u>no se celebran vistas ni se adjudica derecho sustantivo u obligación alguna</u>[15], por lo cual, la determinación sobre si una organización obrera cumple o no con el requisito de interés sustancial <u>es un asunto puramente administrativo dentro del poder discrecional de la agencia, sin las características</u>

---

[15] A esos efectos, <u>ni el Reglamento ni la Ley Núm. 45, ante, proveen una vista para estos casos</u>. Es de notar, que contrario a lo anterior, el Reglamento de la Comisión sí provee para la celebración de una vista --en donde cada parte presentará prueba-- <u>en casos donde existan controversias sobre la composición de las unidades apropiadas</u>. Véase la Sección 305(B) del referido Reglamento.

de un proceso de adjudicación luego de una vista administrativa.

Tal y como lo ha resuelto la jurisprudencia laboral federal, el determinar si existe la muestra de interés sustancial es un asunto encomendado a la discreción de la agencia. En cuanto a estos asuntos en que una agencia ejercita su discreción administrativa nuestra jurisprudencia ha establecido, como norma general, que éste hecho impide la revisión judicial. Véase: Luce & Company v. J.R.T., ante; Federación de Maestros de Puerto Rico v. Molina Torres, ante.[16]

Además, la determinación desestimando la petición no es final. Una determinación de la Comisión sobre estos asuntos es una sin perjuicio, ya que dentro del término de radicación que dispone la Sección 303 (C) del Reglamento de la Comisión --periodo de 90 a 60 días previo al vencimiento de un convenio colectivo o cuando no exista un convenio-- el peticionario puede volver a radicar una petición de representación siempre y cuando cumpla con los requisitos de la Sección 302 del Reglamento de la Comisión. Por consiguiente, la desestimación de la petición presentada por el Sindicato no impide que éste pueda volver a iniciar

---

[16] En Federación de Maestros, ante, resolvimos que la determinación que hace la Comisión al resolver si inicia o no una querella por prácticas ilícitas no constituye una "orden final" a los efectos de revisar la misma ante el foro apelativo intermedio ya que dicha determinación depende en su totalidad de la discreción de la Comisión y, por consiguiente, no está sujeta a ser revisada judicialmente.

un procedimiento para representar a la unidad apropiada en cuestión.

En conclusión, somos del criterio que la resolución en este caso <u>no es una final</u>, de acuerdo a las disposiciones de la L.P.A.U. y del caso <u>A.R.P.E.</u> v. <u>C.U.T.E.</u>, ante. <u>Estamos ante una determinación administrativa que, repetimos, ha sido encomendada a la discreción de la agencia y que responde a su política administrativa especializada</u>. El foro apelativo intermedio, ciertamente, <u>carecía de jurisdicción</u>.

Por los fundamentos antes expuestos, procede expedir el presente recurso y dictar Sentencia <u>confirmatoria</u> de la emitida en el presente caso por el Tribunal de Apelaciones.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Departamento de Educación

    Recurrido

       vs.                  CC-2005-795      CERTIORARI

Sindicato Puertorriqueño de
Maestros

    Peticionario

SENTENCIA

San Juan, Puerto Rico, a 13 de julio de 2006

       Por los fundamentos expuestos en la Opinión que antecede, la cual forma parte íntegra de la presente, se expide el auto solicitado y se dicta Sentencia <u>confirmatoria</u> de la emitida por el Tribunal de Apelaciones.

       Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez concurre en el resultado sin opinión escrita. El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita.

                     Aida Ileana Oquendo Graulau
                    Secretaria del Tribunal Supremo